I please the court. My name is Kirk Hewlett. I'm the counsel for the appellant and the plaintiff below. This appeal arises from the dismissal with prejudice of plaintiff's initial and unamended complaint. And I would like to reserve two minutes, and I will watch the clock. The court below did not find any procedural or pleading defects of the complaint, but rather held that as a matter of law, California will not engage in litigation involving legal wagers placed at a licensed and legally operated race-horsing facility. And just to cut to the chase, why doesn't Kelly squarely say that? Kelly, Your Honor, is distinguishable for several reasons. Looking at the long list of cases that Kelly started analyzing dating back to 1850s and pulling itself all the way through it to date of its decision, what's remarkable is that all of the cases that's relied upon except one involve unlawful gaming activities or involve the efforts by a foreign plaintiff, predictably in Nevada, to come to California to enforce gambling debts that would otherwise be unlawful in California. The exception in the long line of cases to that is the Lavik case, and it was decided by the Court of Appeals in 1948. And there, there was a licensed gaming facility in the state of California that was licensed to allow for draw poker. And the plaintiff in that case borrowed money from the licensed facility in order to game. Predictably, after having lost, the licensor sought to enforce that debt. And the Court found that the evil was the loaning money to gamblers to place bets. And that was the public policy. The public policy, of course, was an important thing underlying the train that got started some time ago. But Kelly seems to me to make it clear that it doesn't matter whether the particular gaming is legal or illegal. It is the courts that do not want to get into the business of dealing with, enforcing and encouraging whatever, gaming. Any problems arising out of gambling transactions. And I think the reason why it's important to look at the cases that Kelly's relying upon and that it's unlawful gaming that is the cornerstone of the case. The Kelly case, frankly, reached out broadly and beyond the scope of the facts of that case. In Kelly, the Court found that the plaintiff was impaired de licto, was engaged in unlawful gaming activities. And its conclusion that lawful gaming activities or lawfully placed wagers in the state of California are unenforceable is pure dicta. The only case the California Courts of Appeals that ever have dealt with the specific policy about horse racing. Because horse racing in 1933 was permitted by law to become a legal wagering gaming activity in California. Counsel, I guess one of my problems with your argument is you're asking us to overrule a California case. And we're not the body to do that. If California courts want to change California law, then they can do it. But I see no evidence that or convincing evidence that the California courts plan to in the near future reverse that law and that policy. It's been on the books a long time. And to add to that, the other thing, it just seems to me that the very existence of the California Horse Racing Board and the fact that it regulates this and has created a fund through which your client could recover his losses, if any, if he could prove them, just sort of reinforces the notion that the courts don't want to be involved in adjudicating these disputes. Well, I think there's a conflict in the California Courts of Appeal and also. What's the conflict? The conflict is between the Neve Cal decision. Well, Neve Cal didn't have anything to do with gambling except that the piece of property that was at stake at the time housed a gambling operation. I agree. That's totally different. It has nothing to do with a gambling transaction. But it was a statement of California's public policy. It was a cute statement of dicta. It was a statement of dicta. And I would suggest, Your Honor, that Kelly's conclusions about lawful versus unlawful gaming activities was itself dicta. I would urge the Court to agree. Counsel, how do you get around the fact that the California courts consistently said, all these issues are matters for the legislature, not the courts, and yet it seems like you want to intrude and change that public policy? Well, I would urge the Court to look at the 1997 Gaming Control Act that was enacted by a California legislature, which specifically adopted the following premise. It's at Business and Profession Codes 19-801. Specifically, the state said that California has permitted operations of gambling establishments for 100 years. Gambling establishments are lawful enterprises in the state of California and are entitled to the full protection of the laws of the state. And I would urge the Court to consider that if a gaming activity is a legalized entity with all the protections of the state of California, then, too, a consumer who is working or doing business with that operation is entitled to benefits of the state's law of California. Surely, the legislature did not intend that it be a one-way street for the business to be able to enforce transactions arising from gaming but not allow consumers who are victims of fraud, as in this case, not be able to. And I would also suggest that the 33 Act, the Horse Racing Act, does in fact provide a state policy to protect consumers when they are wagering at legalized racing facilities. And I would also ask the Court to consider the Youst decision, which is the California Supreme Court decision of 1987. There, the issue was between two horse owners, one of whom accused the other of cheating during the race, and they sought prospective economic damages because of that tortious interference. And the reason I think the Youst opinion is important is for two reasons. A, it implies and impliedly accepted the notion that California courts would engage in an assessment of the contract law of whether or not a claim existed. There, the Court found the tortious interference claim was not a viable claim, but not because the transaction arose from some illegal or unenforceable business transaction. And secondly, to your point about the horse racing authority to remedy these kinds of situations, in that case, the Court said that the authority had the board has no authority whatsoever to adjudicate or to litigate in any way consumer claims of the sort that we have here. It has regulatory authority, but the Court now says specifically you cannot seek legal remedies from. But did it not create a fund from which your client could recover? It did create a fund, but the premises of the fund were that you had to return to the racing facility proof of purchase of the tickets, most of which consumers typically don't keep. Wouldn't you have to prove that if you were going to pursue this case in court? No, Your Honor, because what we're seeking is the rescission of wagers that were placed, and that evidence will be directly from the records of the defendant in this case, which took bets, and we know which bets would be rescinded because of the glitch that they had admitted they knew about for months and months and months and never took out of operation. You want to stay here. Thank you, Your Honor. Boutrous. Good morning, Your Honors. May it please the Court, I am Theodore Boutrous representing Scientific Games. For over 100 years, California has had a strong policy, really almost from the inception of the state, that bars causes of action that revolve around gambling transactions, and that's what we have here is a gambling transaction. The Kelley case tracked through this history very carefully and walked through how the evolution from legal gaming and gambling to legal gambling. The cases have been quite consistent that whether it's legal or illegal, and it was an alternative holding in Kelley that said the public policy of the state bars lawsuits, and it's a sensible policy to embroil courts in this uncertainty and adjudicating who would have won, who would have won at a horse race. It's just not the kind of thing that lends itself well to lawsuits. And the court in the Youst case that counsel mentioned, which was a California Supreme Court case, actually specifically endorsed the notion that the California Horse Racing Court is the proper authority to deal with these issues. And while it noted that perhaps punitive damages, compensatory damages wouldn't be recoverable, it had a footnote that said that doesn't mean that as part of a licensing effort, the court could require a compensatory relief like it did here, like, excuse me, that the board could require a compensatory relief. And here, the system worked quite well. The Horse Racing Board immediately investigated, created a fund, and the plaintiff here could have received exactly the relief he seeks through the class action mechanism by going to the Horse Racing Board. And that is the way our legislature has enacted the system to operate, and it's functioned quite well. There haven't really been any issues or problems that suggest there's any reason to depart from this longstanding policy and rule. The other, the NevCal case, as Judge Reimer, you pointed out, didn't involve a gambling transaction. It involved a contract to buy a casino, quite a different circumstance, as do issues that come up involving the commercial activities of horse racing tracks and the like. They don't involve the actual betting of money and a dispute about that money. So we believe that Kelly states the current law of California. It's a well-reasoned, thorough decision. There's no evidence the California Supreme Court would depart from that ruling. It denied review on Kelly, which isn't dispositive under this Court's Ryman decision. But nonetheless, it's some indication. The lower courts have had no trouble applying the Kelly decision, and we believe that the district court correctly applied it in this case to dismiss the claims with prejudice. Anything else? Thank you, Mr. Chief Justice. Thank you. Thank you. The facts of this case cannot be understated. The defendants in this case have admitted that they knew for months and months and months that they were offering sale of tickets and services in this State, knowing that they were not delivering what they promised. The claim of fraud, as Kelly's counsel admits, it cannot be remedied by the Board. Punitive damages can't be remedied. This is a class action. My client has taken on the fiduciary mantle to represent not only Californians, but citizens of the other States who are victimized by this same practice. Haven't the courts of California traditionally said, even if fraud is involved and it's a gambling debt, we're not going to enforce it and give you a right of collection and enforcement? Is that what the case law says? I think the case law says that if it's involved in an unlawful gambling activity, and I don't believe that there's been any citation to any case other than the Kelly case, which has dicta in it about legalized wagering activities. But none of the cases relied upon by the appellees here, and none of the cases cited say that horse racing, wagering, in a legalized context at a legalized and licensed facility, cannot be enforced. Thank you. Thank you, counsel. The matter just argued to be submitted.
judges: McNamee, Rymer, Wardlaw